

1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

310.500.3500 main
310.500.3501 fax

Joseph R. Taylor
310.500.3547 direct
jtaylor@linerlaw.com

August 12, 2015

<u>VIA E-MAIL AT JGALVIN@HODGSONRUSS.COM AND U.S. MAIL</u>

Jodyann Galvin, Esq.
Hodgson Russ LLP
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040

      RE:    <u>RRKIDZ, Inc./WNED</u>

Dear Ms. Galvin:

      My firm is litigation counsel for RRKIDZ, Inc. ("RRKidz").  Your letter dated August 7, 2015 appears to repudiate the License Agreement dated as of August 23, 2011 (the "Agreement").  I use the defined terms therein.  My client consequently seeks further unequivocal written assurance that WNED will comply with the Agreement and retract the unfounded notice.  The notice (and the demands therein) state your client will only perform the Agreement based upon its untenable interpretation of what RRKidz must or must not do under the Agreement.  This would constitute WNED's total breach and repudiation under New York law, excusing all further performance by RRKidz to WNED while RRKidz' rights would remain in full force and effect.

      You completely ignore both the actual language and context of the Reserved Rights provision and definition of RR Episode.  Your letter even introduces a new defined term ("New Episodes") that is not found in the Agreement, in an apparent attempt to impose a new (and wholly unsupported) meaning to the Agreement, while you simultaneously avoid any mention or even recognition of the obviously important *actual* terms of the Agreement.  Section 3.a. defines WNED's "Reserved Rights" to "produce additional RR Series Episodes (as defined hereinbelow)[.]"  The subsections under Section 3.d. very specifically define and give examples of what are or are not "RR Series Episodes."  Among other requirements, RR Series Episodes must be "fifteen (15) minutes or more."  Audio-visual pieces "less than fifteen (15) minutes" very specifically "shall not be deemed an additional RR Series Episode."  [Sections 3.d. (i) and (ii)].  Even if several short audio-visual pieces are edited together to create a new piece, that new piece cannot be construed as an RR Series Episode so long as the aggregate running time of the new piece remains under 15 minutes.

      Both your client and your firm understood and agreed to the 15-minute limit as evidenced by the correspondence and documentation during the negotiation of the Agreement.  WNED cannot simply deem a number of individual pieces to be a "collection" whether unified by theme, content, or color, then include in its collection a sufficient number of single pieces for which the total aggregate running time exceeds 15

Jodyann Galvin, Esq.
August 12, 2015
Page 2

minutes, and declare its collection an RR Series Episode. Otherwise it would be impossible to have more than 15 minutes in the aggregate of audio-visual material on the Internet. On the contrary, the Agreement is very specific about the 15-minute time limit which applies to a single piece -- whether that piece is a single subject, or whether it is comprised of various segments or pieces edited together to comprise a new single piece.

RRKidz' audio-visual activities are well within the scope of its rights under the Agreement. My firm has examined the RR Branded Content on the Internet you cite obtusely as infringing on the Reserved Rights. Not one item is even close to 15 minutes in length, nor are any of these short pieces assembled or edited into a single piece of 15 minutes or more. Thus, none of the videos can possibly be construed as "an additional RR Episode."

Not only do you ignore the above-referenced facts, you ignore that WNED's own conduct confirms the insincerity of your claims. The conduct of the parties is the best evidence of practical construction. RRKidz posted its first video on YouTube page on October 9, 2012, almost three years ago. The earliest of the "Video Field Trip" items currently running on the RRKidz YouTube channel ("How Money Is Made") was published on July 25, 2013 – over two years ago (and runs all of 4:38). It is clear that the right to produce audio-visual pieces such as those long-available on the Internet is the essence of the Agreement, and the videos are the hallmark of the digital application offered by RRKidz since 2012. WNED has been fully aware of RRKidz' business activities since inception, and not only never objected to them, but in fact applauded and sought to benefit from them by, among other things, asking for (and receiving) more prominent credit and public acknowledgements of ownership than are required under the Agreement. Furthermore, as one of the Kickstarter backers that helped fund the expansion of RRKidz' activities under the Reading Rainbow banner, WNED's CEO Donald Boswell had even more insight into company activities through frequent "backer updates." WNED also accepted payment of its share of revenues under the Agreement without objection.

As for Netflix, my client discussed last year a potential series with Netflix based on a fictitious universe called "Libraria" which RRKidz created and with which the Henson Company would be involved. My client made clear with Netflix that WNED controlled the series rights to Reading Rainbow, while the "Libraria" concept is original to RRKidz.

I have examined specific correspondence not only from Mr. Boswell but also your firm specifically showing both to be not only fully advised but also expressly contemplating my client actually leading negotiations with Netflix, but with WNED having a face-to-face with Netflix at the time of closing. WNED never approved of the Libraria concept, so nothing ever came to fruition. WNED's Reserved Rights were never impaired in the least. These matters were dispensed with long ago in 2014. Trying to exhume and distort these matters the following year as if WNED did not actually participate as a ground for your letter only suggests the letter was sent out of uncontrolled animosity rather than by reason of a credible legal position. Furthermore, notwithstanding whatever web blog or Internet article you want to cite, RRKidz is not pursuing, producing, or shooting a new Reading Rainbow series or additional RR Episode. It is the

20560.001-2481089v2

Jodyann Galvin, Esq.
August 12, 2015
Page 3

Agreement that controls, not the errant speculation of an Internet blogger who uses the word "episode." We suggest you consider the reliability of your sources before repudiating based upon wildly inaccurate claims.

It is extremely difficult to conclude anything but that your firm was instructed to send an extreme letter repudiating the Agreement, regardless of whether the claims asserted depend upon both an untenable interpretation of the Agreement and disregard for all relevant facts known to WNED and your firm. For this reason, this letter requests further written assurances retracting such repudiation and confirming compliance with the plain terms of the Agreement particularly given the serious adverse consequences that would befall your client from such wrongful repudiation.

This letter is without waiver of or prejudice to any of my client's rights or remedies at law or in equity, including the right to outside legal counsel fees in legal proceedings under Section 18.e. of the Agreement. They are all expressly reserved.

Very truly yours,

LINER LLP

Joseph R. Taylor

JRT:ll