# LUPKIN & ASSOCIATES PLLC

26 Broadway, 19th Floor
New York, NY 10004

Tel: (646) 367-2771
Fax: (646) 219-4870
www.lupkinassociates.com

September 16, 2016

**VIA ECF**

Hon. Vernon S. Broderick
United States District Court for the
Southern District of New York
40 Foley Square, Room 415
New York, NY 10007

Re:   *RRKidz, Inc. v. Western New York Public Broadcasting Association*
      Case No. 1:16-cv-00912-VSB – Request for Pre-Motion Discovery Conference

Dear Judge Broderick:

Defendant/counterclaim-plaintiff Western New York Public Broadcasting Association ("WNED") respectfully requests a pre-motion discovery conference to address—and hopefully resolve without motion practice—the issues identified below.

**Background**

WNED owns the intellectual property associated with the *Reading Rainbow* television series, including the registered trademarks (the "RR Marks"). In 2011, WNED granted plaintiff/counterclaim-defendant RRKidz, Inc. ("RRKIDZ") an exclusive license to use the RR Marks in connection with certain goods, products, and services. RRKIDZ subsequently began to say and do things to suggest (or, in some cases, falsely assert) that RRKIDZ and/or its principals, LeVar Burton and Mark Wolfe, owned the RR Marks. RRKIDZ also began trying to wrest control over the RR Marks from WNED, even as RRKIDZ and its principals behaved in ways that were detrimental to the reputation and goodwill of the RR Marks and WNED.

On August 7, 2015, WNED terminated the license agreement. On February 5, 2016, RRKIDZ commenced this action seeking a declaratory judgment that, among other things, the license was not terminated; RRKIDZ had not breached the license agreement; and RRKIDZ had not violated WNED's trademark rights. WNED has asserted counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, trademark infringement, false advertising, deceptive business practices, unfair competition, unjust enrichment, and tortious interference with prospective economic advantage. WNED alleges, *inter alia*, that RRKIDZ acted willfully, and that WNED thus is entitled to punitive damages

**Efforts to Informally Resolve the Issues**

On August 26, 2016, WNED sent RRKIDZ a letter detailing various discovery issues and asking RRKIDZ to meet and confer during the week of August 29, 2016. RRKIDZ did not respond until September 9, 2016—and then only after WNED threatened to involve the Court. Counsel conferred telephonically for over an hour and a half on September 12, 2016 and continued to exchange meet-and-confer correspondence throughout the week. Many issues were resolved, but the parties are at an impasse with respect to the two issues addressed below.

**RRKIDZ Refuses to Search the Documents of its Head of Marketing**

On August 10, 2016, RRKIDZ identified the individual custodians whose data it intended to search for potentially responsive ESI. That same day, WNED asked RRKIDZ to add Birgitta Westphal, RRKIDZ's Head of Marketing, as a custodian.[1] RRKIDZ did not respond until August 30, 2016, when it refused to search Ms. Westphal's documents. RRKIDZ does not dispute that Ms. Westphal is in possession of relevant, discoverable documents. Rather, RRKIDZ refuses because Ms. Westphal "only joined RRKidz in January 2016 and Ms. Westphal copies the other custodians as a matter of practice, thus RRKidz prefers not to incur the additional collections costs for those few duplicative emails."

RRKIDZ has refused to provide specifics regarding the supposed "costs and delays" associated with searching Ms. Westphal's documents, which must be *de minimus*. The burdens of document collection and review are directly proportional to the volume of documents. As RRKIDZ concedes, Ms. Westphal's short tenure at RRKIDZ means she has "few" documents. RRKIDZ also contends that many of those documents would be duplicates, and duplicate documents typically are filtered out as part of the automated ESI collection process. Whatever incremental "costs and delays" may result from searching Ms. Westphal's documents surely already have been exceeded by RRKIDZ's three-week delay in initially responding to WNED's request, and the further delay and cost caused by RRKIDZ's subsequent refusal to search Ms. Westphal's documents, which has necessitated this application.

**RRKIDZ Refuses to Disclose How It Used Kickstarter Donations**

RRKIDZ launched a Kickstarter fundraising campaign under the *Reading Rainbow* name without giving WNED meaningful notice of or input into the project. *See* Counterclaims, Docket No. 22, ¶¶ 47-52. RRKIDZ represented to donors that it would use the money they donated to "[b]ring Reading Rainbow's library of interactive books & video field trips to more platforms & provide free access to classrooms in need."[2] As described in WNED's recent motion for a preliminary injunction, the Kickstarter campaign prompted questions about whether a for-profit

---

[1] The *Stipulation and Order Regarding ESI Production Protocol* entered on July 22, 2016 requires the parties to meet and confer in good faith regarding, *inter alia*, the custodians whose ESI is to be searched. Dkt. No. 41, ¶ 9.

[2] https://www.kickstarter.com/projects/readingrainbow/bring-reading-rainbow-back-for-every-child-everywh/description

company like RRKIDZ could be trusted as a steward of the *Reading Rainbow* brand. At the same time, RRKIDZ's exclusion of WNED from the planning and execution of the campaign, as well as its subsequent refusal to share information regarding the campaign, exemplify RRKIDZ's efforts to usurp WNED's control over the *Reading Rainbow* brand.

WNED has asked for documents sufficient to show what RRKIDZ actually did with the Kickstarter money.[3] WNED believes that those documents will show, among other things: (a) that RRKIDZ did not earmark the Kickstarter money for any particular purpose, but rather put it in a "slush fund" for general use (relevant to WNED's claim that RRKIDZ's unilateral use of the RR Marks to raise money supports a claim for unjust enrichment); (b) that RRKIDZ spent a disproportionate amount of that money on "backer rewards"—*i.e.*, goods and services that RRKIDZ gave to donors in exchange for their contributions—rather than on making *Reading Rainbow* available to needy schoolchildren (relevant to WNED's claim that RRKIDZ's failure to consult with WNED regarding RRKIDZ's use of the RR Marks has hampered the exploitation of those marks); and (c) that RRKIDZ used the money for purposes other than those for which it represented it would (relevant to WNED's claim that RRKIDZ's conduct is likely to damage WNED's reputation and the goodwill of the RR Marks). RRKIDZ has offered no justification for its refusal to produce these documents, other than to suggest (again, without any factual support) that it would be burdensome to do so if the money was not specifically earmarked.

Because the parties have been unable to resolve these issues through the meet and confer process, WNED asks that the Court schedule a conference to address them. Because lead counsel for RRKIDZ is located in California, WNED suggests that the conference be held telephonically.

Respectfully,

Michael B. Smith

---

[3] Request No. 64 seeks "Documents concerning [RRKIDZ's] use of the funds raised through the Kickstarter Campaign." RRKIDZ responded with boilerplate objections: "In addition to the General Objections, RRKidz further objects to this request to the extent it seeks Privileged Information. RRKidz further objects to this request on the grounds that it is overly broad and unduly burdensome and not likely to lead to the discovery of admissible evidence. RRKidz invites WNED to meet and confer in an attempt to clarify and narrow the scope of this request." During the meet and confer process, WNED narrowed its request to documents sufficient to show how the funds were used.