LINER LLP

1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

310.500.3500 main
310.500.3501 fax

Tiffany R. Caterina
310.500.3565 direct
tcaterina@linerlaw.com

September 21, 2016

VIA ECF

Hon. Vernon S. Broderick
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, New York 10007

RE:   *RRKidz, Inc. ("RRKidz") v. Western New York Public Broadcasting Association ("WNED")*
      Case No. 1:16-cv-00912-VSB - Response to WNED's Request for Pre-Motion Discovery Conference

Your Honor:

WNED is using cumbersome and harassing discovery to drive up expense and delay the current case schedule (which WNED opposed). While this is an unfortunate but all-too-common tactic in litigation, RRKidz is truly surprised by WNED's waste of the Court's time on trivial matters. It appears WNED's design has been to concoct a discovery dispute (regardless of merit) in aid of pushing back the October 31, 2016 fact discovery cut-off.[1]

**Document Request – Use of Kickstarter Funding**

WNED contradicts itself in an attempt to rationalize to the Court its harassing discovery. In its Counterclaims (Dkt. 22), ***WNED wanted to be associated with RRKidz's Kickstarter Campaign*** (the "Campaign") – WNED complains that it should have been recognized as the licensor of Reading Rainbow for the Campaign. Now, in a complete reversal, WNED claims that RRKidz's handling of the Campaign (that only months ago WNED was desperate to be associated with) somehow damaged the Reading Rainbow brand.[2]

WNED's request for documents pertaining to RRKidz's use of Campaign funds must be viewed in context. The license agreement between the parties grants RRKidz rights to the Reading Rainbow trademarks "for use in the creation of all goods, products and services . . . in any manner and all media"

---

[1] WNED complains of RRKidz's supposed delay. WNED does not inform the Court that it sent RRKidz a 10-page letter manufacturing issues with 27 out of 70 of RRKidz's responses to WNED's document requests. The letter came on the same day RRKidz's opposition to WNED's motion for preliminary injunction was due, and while counsel was preparing to try an arbitration the week of September 5th.

[2] WNED's flip-flopping is symptomatic of its kitchen-sink filing of meritless counterclaims (just like WNED's motion for preliminary injunction which complained about matters that don't even appear in the Counterclaims).

60523.001-3306571v3

United States District Court
September 21, 2016
Page 2

except for WNED's reserved right to produce new television episodes or feature films.  The Campaign launched on May 28, 2014.  Don Boswell (the CEO of WNED) and his wife, Marilyn, donated $500 to the Campaign.  WNED did not raise an objection to the Campaign until its March 10, 2016 Counterclaim (Dkt. 22).

Ignoring RRKidz's licensing rights, WNED's Counterclaim alleges that RRKidz "usurp[ed] for itself all the goodwill and reputational benefits that should have gone to WNED as owner of the RR Marks" because "**there is no mention of WNED** *anywhere* **on the Kickstarter page**." (Dkt. 22, ¶¶ 51-52; emphasis in original).  WNED further alleges that "RRKidz obtained benefits belonging to WNED, including the $6.5 million proceeds from the Kickstarter campaign[.]"  (Dkt. ¶ 121).  In short, WNED alleges that it was damaged by not being identified as the licensor, and that RRKidz was not authorized to use the Reading Rainbow trademarks in the Campaign, so all proceeds should go to WNED.

There are no allegations that RRKidz misused Campaign funds, or that the Campaign or RRKidz's use of Campaign funds damaged the reputation and goodwill associated with Reading Rainbow.  Quite the opposite – WNED is complaining that it wasn't more publically touted as the licensor the Reading Rainbow trademarks on the Campaign website.  Simply put, WNED's current fishing expedition is not relevant to the claims asserted in its Counterclaims.

Logistically, RRKidz cannot produce documents showing how the Campaign funds, specifically as opposed to other funds, were used.  The Campaign funds were commingled with other revenues and funding.  There was no obligation for RRKidz separate the Campaign funds, and RRKidz never represented to anyone that it would do so.  Rather, RRKidz represented publically that the Campaign would provide for three projects:  (1) making *Skybrary* available for more children by bringing it to the Internet and other mobile platforms in additional to the iPad; (2) creating a classroom version, *Skybrary School*, for use by teachers; and, (3) donating *Skybrary School* to classrooms in need (the number of promised donations increased from 2,500 to 10,000 as Campaign funds increased).  The success of these projects is publically-available (the products are available in the marketplace), and, as a contributor to the Campaign, Mr. Boswell received regular updates on the status of the projects.

**ESI Search Parameters – Ms. Birgitta Westphal**

RRKidz opposes WNED's request that RRKidz collect and search ESI from Birgitta Westphal's email and computer for several practical reasons.

First, Ms. Westphal was not even hired by RRKidz until January 2016 (2 months before WNED filed its Counterclaims).  This, Ms. Westphal had no involvement whatsoever in the subjects of the Counterclaims:  the license agreement (dated August 23, 2001), social media pages (WNED complaints dated March 24, 2015), the RRKidz website (WNED complaints dated March 24, 2015), the Netflix discussions (September – December 2014), the Campaign (May 28, 2014), short audio-visual content

United States District Court
September 21, 2016
Page 3


released by RRKidz (WNED complaint dated March 4, 2015), WNED's notice of termination of the license agreement (dated August 7, 015).

Second, in light of Ms. Westphal's lack of involvement in the matters at issue, the additional time, expense, and interruption to business to collect and search Ms. Westphal's ESI is unjustified.  RRKidz's e-discovery vendor would need to perform an on-site collection and process the data, which would cost an estimated $2,000 (based upon collection and processing costs for other custodians).  Furthermore, WNED has insisted RRKidz use 151 ESI search terms, resulting in wasted attorney review time on an extremely inflated amout of non-responsive documents.

Third, in the event Ms. Westphal has documents relevant to this litigation, she copies RRKidz's principles (co-founders LeVar Burton and Mark Wolfe and in-house counsel Linda Benjamin) all of whom have been included in RRKidz's ESI search.

RRKidz believes the parties' energies are best focused on completing their respective document productions and depositions, without unnecessary side-tracks, so that this case can proceed on schedule.

Thank you for your consideration.

Respectfully,

LINER LLP

Tiffany R. Caterina


cc:  Counsel of record (via ECF)